UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MIN KYU SONG, ANDY CHUNG, JONG HYUK
MOON, WOO BIN IM, CHANG SEOK SON,
individually and on behalf of others similarly situated

Case No. 17-cv-5904

Plaintiffs,

**COMPLAINT**

-against-

**(Jury Trial Demanded)**

CIRCLE NYC INC., ROBERT KWAK,
JOSEPH KO and SCOTT ALLING

Defendants.

Plaintiffs MIN KYU SONG, ANDY CHUNG, WOOBIN IM, JONGHYUK MOON, and

CHANG SEOK SON ("Plaintiffs"), on behalf of themselves and all others similarly situated, by their

undersigned attorneys, bring his action under federal and state labor laws to recover Plaintiffs' lawful

wages plus liquidated and other damages, interest, attorneys' fees and the costs of this action arising

out of their employment at the Circle NYC nightclub.

## NATURE OF THE ACTION

1.      Plaintiffs are former employees of Circle NYC, Inc. which operates a nightclub at 135

W 41st Street, New York, New York 10036 (the "Club").

2.      Defendants ROBERT KWAK, JOSEPH KO and SCOTT ALLING (with Circle

NYC, Inc. collectively referred to as "Defendants") were also the Plaintiffs' employers during their

employment at the Club.

3.      Plaintiffs worked as waiters at the Club at different time periods beginning in or about

2008 and continuing through April 2017. Defendants employed Plaintiffs and dozens of other

waiters during this time period.

4.      Plaintiffs' primary duties included setting up the Club before patrons arrived, stocking

the Club's refrigerator's with Champagne, setting and cleaning glasses, serving bottles to patrons, and cleaning the Club after patrons left.

5.    Throughout the course of their employment at the Club, Plaintiffs were not paid any wages for the hours they worked and only received tips from a pool that was controlled by Defendants.

6.    Even the tips that belonged to Plaintiffs were not fully paid to Plaintiffs because Defendants shared the tips with other employees who were not eligible to receive tips.

7.    For a period of the time of their employment all of the Plaintiffs received their portion of the tips in cash.

8.    In or around 2013 some Plaintiffs began receiving a portion of the tips by check.

9.    However, Defendants concocted a scheme in which some of the Plaintiffs were given checks for more then their share of the tips but were then required to deposit the checks, withdraw a portion of the deposit in cash and return the cash to Defendants.

10.    Defendants then used the cash to pay employees to whom they could not issue checks because they did not have valid social security numbers.

11.    Defendants also issued inflated IRS W-2 forms to some Plaintiffs.

12.    This had the effect of making it appear that the employees who received the checks had relatively high incomes, which had negative tax consequences on these employees and disqualified them from certain benefits to which they were legally entitled.

13.    Defendants did not provide Plaintiffs with any wage notice during their employment and did not provide Plaintiffs with accurate wage statements.

14.    Upon information and belief, Defendants did not keep records of the hours worked by Plaintiffs, in violation of law.

2

15.     The hours worked Plaintiffs are therefore conservative estimates based upon Plaintiffs' best recollections and records.

16.     As stated herein, Defendants' conduct and practices constituted violations of federal and state labor laws relating to: (i) minimum wages; (ii) overtime pay; (iii)"spread of hours" pay; (iv) failure to provide Plaintiff with proper wage notices and statements; (v) tip misappropriation.

17.     Pursuant to 29 U.S.C. §216(b), Plaintiffs seek to represent a collective action under the FLSA consisting of "all current and former waiters who were employed by Defendants in any workweek from August 1, 2014 forward, and who were not compensated at least the applicable minimum wage for each hour worked and one and one half times the applicable minimum wage for all hours worked over 40 in any workweek during this time period" (the "Putative Collective Action Members").

18.     Plaintiffs have consented, in writing, to be part to this action, pursuant to 29 U.S.C. §216(b). (See Consent forms annexed as Exhibit "A").

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., 29 U.S.C. § 216 and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because those claims arise out of the same common nucleus of operative facts as the federal claims.

20.     Plaintiffs' state law claims are so closely related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

### Plaintiffs

22.    Plaintiff Min Kyu Song is an adult individual residing in New Jersey.

23.    Plaintiff Andy Chung is an adult individual residing in Florida.

24.    Plaintiff Jong Hyuk Moon is an adult individual residing in  New Jersey.

25.    Plaintiff Woo Bin Im is an adult individual residing in Florida.

26.    Plaintiff Chang Seok Son is an adult individual residing in New Jersey.

27.    Plaintiffs are former employees of Defendant Circle NYC Inc., Robert Kwak, Joseph Ko and Scott Alling.

28.    Plaintiff Song worked for Defendants from approximately September 2011 to approximately June, 2017.

29.    Plaintiff Chung worked for Defendants from approximately July 2008 to approximately June 2017, with a hiatus from approximately January 2012 to May 2013.

30.    Plaintiff Moon worked for Defendants from approximately January 2010 to approximately June 2017.

31.    Plaintiff Im worked for Defendants from approximately July 2009 to approximately June 2017.

32.    Plaintiff Son worked for Defendants from approximately January 2015 to approximately June 2017.

### Defendants

33.    Upon information and belief, Defendant Circle NYC Inc. is a corporation organized and existing under the laws of the State of New York.

34.    Upon information and belief, at all times relevant to this action, Circle NYC operated

a dance club at 135 W 41st Street, New York, NY 10036 (the "Club").

35.    Upon information and belief, at all times relevant to the allegations in this Complaint, Circle NYC has been an enterprise engaged in interstate commerce within the meaning of the FLSA in that it (i) has and has had employees engaged in commerce or in the production of goods for commerce, or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person; and (ii) has and has had an annual gross volume of sales of not less than $500,000.

36.    Upon information and belief, at all times relevant to the allegations herein, Defendant Robert Kwak ("Kwak") is an owner and/or shareholder and/or officer of Circle NYC.

37.    Defendant Kwak had the power to hire and fire Club employees, and control the terms and conditions of Plaintiffs' employment, including establishing their wages, setting their work schedules, and maintaining their employment records.

38.    Upon information and belief, at all times relevant to the allegations herein, Defendant Joseph Ko ("Ko") is an owner and/or shareholder and/or officer of Circle NYC.

39.    Defendant Ko had the power to hire and fire Club employees, and control the terms and conditions of Plaintiffs' employment, including establishing their wages, setting their work schedules, and maintaining their employment records.

40.    Upon information and belief, at all times relevant to the allegations herein, Defendant Scott Alling ("Alling") is an owner and/or shareholder and/or officer of Circle NYC.

41.    Defendant Alling had the power to hire and fire Club employees, and control the terms and conditions of Plaintiffs' employment, including establishing their wages, setting their work schedules, and maintaining their employment records.

42.    At all times relevant to this action, Defendants Circle NYC, Kwak, Ko and Alling

were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law.

## FLSA COLLECTIVE ACTION ALLEGATIONS

43.     Plaintiffs bring the First, Third, and Eighth Causes of Action as a collective action pursuant to FLSA §216(b), on behalf of themselves and all current and former servers employed by Defendants at the Club on or after the date that is three years before the filing of the Complaint in this case (the "Putative Collective Action Members").

44.     At all relevant times. Plaintiffs and the Putative Collective Action Members are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, plan and common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay them at least the minimum wage, one-and-one-half times the minimum wage for work in excess of forty hours per workweek and misappropriating tips . The claims of Plaintiffs stated herein are essentially the same as those of the other Putative Collective Action Members.

45.     The First, Third, and Eighth Causes of Action are properly brought under and maintained as an opt-in collective action pursuant to §216(b) of the FLSA. The Putative Collective Action Members are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the Putative Collective Action Members via first class mail to the last addresses known to Defendants.

## FACTUAL ALLEGATIONS

46.     Plaintiffs and Putative Collective Action Members worked as waiters at the Club.

47.     Over various time periods, Plaintiffs and Putative Collective Action Members worked either 29 or 40 hours on most weeks and more than 40 hours on several weeks throughout the years.

6

48.    Plaintiffs' and Putative Collective Action Members' primary duties included setting up the Club before patrons arrived, stocking the Club's refrigerators with Champagne, setting and cleaning glasses, serving bottles to patrons and cleaning the Club after patrons left.

49.    Plaintiffs and Putative Collective Action Members worked either two or three days each week for at least 11 hours each day and worked an additional seven hours each week hanging posters for the Club and doing other promotional work.

50.    Plaintiffs and Putative Collective Action Members worked additional hours on holidays and other special occasions on which the Club was open and additional hours selling tickets for special events.

51.    Plaintiffs and Putative Collective Action Members did not receive any wages for the hours that they worked and only received a portion of the tips that they earned.

## PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS

### Min Kyu Song's Employment

**2011**

52.    While employed at the Club from September 2011 through December 2011, Plaintiff Song worked at the Club on approximately 44 regularly scheduled days for 11 hours on each day from 7 p.m. to past 6 a.m.

53.    During this time period Plaintiff also worked an additional approximate 35 hours on six holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

54.    Plaintiff Song's primary duties throughout his employment included setting up the Club before patrons arrived, stocking the Club's refrigerator's with Champagne, setting and cleaning glasses, serving bottles to patrons, and cleaning the Club after patrons left.

7

55.    Plaintiff Song estimates that he worked at least 531 hours during this time period.

56.    For an initial one month "training period" Plaintiff Song was paid $50 per day.

57.    Plaintiff Song estimates that he received this $50 of pay on approximately 12 days.

58.    After the initial training period, Plaintiff Song was not paid any wages for the hours that he worked.

59.    Instead, Plaintiff was paid only a portion of the tips that were left by patrons of the Club.

**2012**

60.    While employed at the Club from  January 1, 2012 through December 31, 2012, Plaintiff Song worked at the Club on every nearly Thursday, Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

61.    Plaintiff Song was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

62.    Plaintiff Song worked an additional approximately 68 hours on six holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

63.    Plaintiff also worked for six nights at the "Asseteria" party for 10 hours each night.

64.    Plaintiff Song was also required to attend dance practice sessions to prepare for a dance  performance that the servers at the Club were required to perform in.

65.    Plaintiff Song estimates that he worked 404 hours practicing for the dance performance.

66.    Plaintiff Song estimates that in 2012 he worked at least 2624 hours.

67.    Of these hours, Plaintiff Song estimates that 544 were "overtime hours" worked in excess of 40 hours in a week.

8

68.     Plaintiff Song was not paid any wages for the hours that he worked.

69.     Instead, Plaintiff Song was paid only a portion of the tips that were left by patrons of the Club.

**2013**

70.     While employed at the Club from  January 1, 2013 through December 31, 2013, Plaintiff Song worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

71.     Plaintiff Song was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

72.     Plaintiff Song worked an additional approximately 68 hours on six holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

73.     Plaintiff Song worked an additional 7 hours at the "Diplo" party and an additional 10 hours assisting with the Club renovation on January 2, 2013.

74.     Plaintiff also worked for six nights at the "Asseteria" party for 10 hours each night.

75.      Plaintiff Song was also required to attend dance practice sessions to prepare for a dance  performance that the servers at the Club were required to perform in.

76.     Plaintiff estimates that he worked 532 hours practicing for the dance performance.

77.      Plaintiff estimates that in 2013 he worked at least 2757 hours.

78.     Of these hours, Plaintiff Song estimates that 677 were "overtime hours" worked in excess of 40 hours in a week.

79.     Plaintiff Song was not paid any wages for the hours that he worked.

80.     Plaintiff Song was paid only a portion of the tips that were left by patrons of the Club.

9

**2014**

81.     While employed at the Club from  January 1, 2014 through December 31, 2014, Plaintiff Song worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

82.     Plaintiff Song was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

83.     Plaintiff Song worked an additional approximately 68 hours on six holidays on which the Club was open, and additional 12 hours over two nights during the World Cup finals and an additional 12 hours selling Club tickets for Halloween and New Years.

84.     Plaintiff Song also worked for six nights at the "Asseteria" party for 10 hours each night.

85.     Plaintiff Song estimates that in 2014 he worked at least 2232 hours.

86.     Of these hours, Plaintiff Song estimates that 152 were "overtime hours" worked in excess of 40 hours in a week.

87.     Plaintiff Song was not paid any wages for the hours that he worked.

88.     Instead, Plaintiff Song was paid only a portion of the tips that were left by patrons of the Club.

**2015**

89.     While employed at the Club from  January 1, 2015 through December 31, 2015, Plaintiff Song worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

90.     Plaintiff Song was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

91.    Plaintiff Song worked an additional approximately 35 hours on three holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

92.    Plaintiff Song also worked for six nights at the "Asseteria" party for 10 hours each night.

93.    Plaintiff Song estimates that in 2015 he worked at least 2187 hours.

94.    Of these hours, Plaintiff Song estimates that 107 were "overtime hours" worked in excess of 40 hours in a week.

95.    Plaintiff Song was not paid any wages for the hours that he worked.

96.    Instead, Plaintiff Song was paid only a portion of the tips that were left by patrons of the Club.

**2016**

97.    While employed at the Club from January 1, 2016 through approximately December 31, 2016, Plaintiff Song worked at the Club on nearly every other Thursday, and every Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

98.    Plaintiff Song was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

99.    Plaintiff Song worked an additional approximately 33 hours on three holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

100.    Plaintiff Song estimates that in 2016 he worked at least 1787 hours.

101.    Plaintiff Song was not paid any wages for the hours that he worked.

102.    Instead, Plaintiff Song was paid only a portion of the tips that were left by patrons of

the Club.

**2017**

103.    While employed at the Club from January 1, 2017 through approximately May 30, 2017, Plaintiff Song worked at the Club on nearly every other Thursday, and nearly every Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

104.    Plaintiff Song was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

105.    Plaintiff Song estimates that in 2017 he worked at least 690 hours.

106.    Plaintiff Song was not paid any wages for the hours that he worked.

107.    Instead, Plaintiff Song was paid only a portion of the tips that were left by patrons of the Club.

108.    Plaintiff Song was not paid any of the tips that were earned over his final two weeks of employment.

### Andy Chung's Employment

**2011**

109.    While employed at the Club from January 1, 2011 through December 31, 2011, Plaintiff Chung worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

110.    Plaintiff Chung's primary duties throughout his employment included setting up the Club before patrons arrived, stocking the Club's refrigerator's with Champagne, setting and cleaning glasses, serving bottles to patrons, and cleaning the Club after patrons left.

111.    Plaintiff Chung was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

112.     During this time period Plaintiff Chung also worked an additional approximate 79 hours on seven holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

113.     Plaintiff Chung estimates that he worked at least 2171 hours during this time period.

114.     Of these hours, Plaintiff Chung estimates that 91 were "overtime hours" worked in excess of 40 hours in a week.

115.     Plaintiff Chung was not paid any wages for the hours that he worked.

116.     Instead, Plaintiff was paid only a portion of the tips that were left by patrons of the Club.

**2013**

117.     While employed at the Club from approximately May, 2013 through December 31, 2013, Plaintiff Chung worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

118.     Plaintiff Chung was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

119.     Plaintiff Chung worked an additional approximately 57 hours on five holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

120.     Plaintiff Chung worked an additional 7 hours at the "Diplo" party.

121.     Plaintiff also worked for six nights at the "Asseteria" party for 10 hours each night.

122.     Plaintiff estimates that in 2013 he worked at least 1416 hours.

123.     Plaintiff Chung was not paid any wages for the hours that he worked.

124.     Instead, Plaintiff Chung was paid only a portion of the tips that were left by patrons

of the Club.

**2014**

125.    While employed at the Club from January 1, 2014 through December 31, 2014, Plaintiff Chung worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

126.    Plaintiff Chung was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

127.    Plaintiff Chung worked an additional approximately 57 hours on five holidays on which the Club was open, an additional 12 hours over two nights during the World Cup finals and an additional 12 hours selling Club tickets for Halloween and New Years.

128.    Plaintiff Chung also worked for six nights at the "Asseteria" party for 10 hours each night.

129.    Plaintiff Chung estimates that in 2014 he worked at least 2221 hours.

130.    Of these hours, Plaintiff Chung estimates that 141 were "overtime hours" worked in excess of 40 hours in a week.

131.    Plaintiff Chung was not paid any wages for the hours that he worked.

132.    Instead, Plaintiff Chung was paid only a portion of the tips that were left by patrons of the Club.

**2015**

133.    While employed at the Club from January 1, 2015 through December 31, 2015, Plaintiff Chung worked at the Club on nearly every other Thursday and on nearly every Friday and Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

134.    Plaintiff Chung was required to work an additional seven hours each week hanging

14

posters for the Club and doing other promotional work.

135.    Plaintiff Chung worked an additional approximately 35 hours on three holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

136.    Plaintiff Chung also worked for six nights at the "Asseteria" party for 10 hours each night.

137.    Plaintiff Chung estimates that in 2015 he worked at least 1849 hours.

138.    Plaintiff Chung was not paid any wages for the hours that he worked.

139.    Instead, Plaintiff Chung was paid only a portion of the tips that were left by patrons of the Club.

**2016**

140.    While employed at the Club from approximately January 1, 2016 through approximately December 31, 2016, Plaintiff Chung worked at the Club on nearly every other Thursday and on nearly every Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

141.    Plaintiff Chung was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

142.    Plaintiff Chung worked an additional approximately 33 hours on three holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

143.    Plaintiff Chung estimates that in 2016 he worked at least 1787 hours.

144.    Plaintiff Chung was not paid any wages for the hours that he worked.

145.    Instead, Plaintiff Chung was paid only a portion of the tips that were left by patrons

of the Club.

**2017**

146.     While employed at the Club from January 1, 2017 through approximately May 30, 2017, Plaintiff Chung worked at the Club on nearly every other Thursday, and nearly every Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

147.     Plaintiff Chung was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

148.     Plaintiff Chung estimates that in 2017 he worked at least 690 hours.

149.     Plaintiff Chung was not paid any wages for the hours that he worked.

150.     Instead, Plaintiff Chung was paid only a portion of the tips that were left by patrons of the Club.

151.     Plaintiff Chung was not paid any of the tips that were earned over his final two weeks of employment.

### Jong Hyuk Moon's Employment

**2011**

152.     While employed at the Club from January 1, 2011 through December 31, 2011, Plaintiff Moon worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

153.     Plaintiff Moon's primary duties throughout his employment included setting up the Club before patrons arrived, stocking the Club's refrigerator's with Champagne, setting and cleaning glasses, serving bottles to patrons, and cleaning the Club after patrons left.

154.     Plaintiff Moon was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

155.    Plaintiff Moon worked an additional approximately 79 hours on seven holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

156.    Plaintiff Moon was also required to attend dance practice sessions to prepare for a dance performance that the servers at the Club were required to perform in.

157.    Plaintiff Moon estimates that he worked 192 hours practicing for the dance performance.

158.    Plaintiff Moon estimates that in 2011 he worked at least 2624 hours.

159.    Of these hours, Plaintiff Moon estimates that 544 were "overtime hours" worked in excess of 40 hours in a week.

160.    Plaintiff Moon was not paid any wages for the hours that he worked.

161.    Instead, Plaintiff was paid only a portion of the tips that were left by patrons of the Club.

**2012**

162.    While employed at the Club from January 1, 2012 through December 31, 2012, Plaintiff Moon worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

163.    Plaintiff Moon was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

164.    Plaintiff Moon worked an additional approximately 68 hours on six holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

165.    Plaintiff Moon estimates that in 2012 he worked at least 2148 hours.

17

166.   Of these hours, Plaintiff Moon estimates that 68 were "overtime hours" worked in excess of 40 hours in a week.

167.   Plaintiff Moon was not paid any wages for the hours that he worked.

168.   Instead, Plaintiff Moon was paid only a portion of the tips that were left by patrons of the Club.

**2013**

169.   While employed at the Club from approximately January 1, 2013 through approximately December 31, 2013, Plaintiff Moon worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

170.   Plaintiff Moon was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

171.   Plaintiff Moon worked an additional approximately 58 hours on five holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

172.   Plaintiff Moon worked an additional 7 hours at the "Diplo" party and an additional 10 hours assisting with the Club renovation in January , 2013.

173.   Plaintiff estimates that in 2013 he worked at least 2157 hours.

174.   Of these hours, Plaintiff Moon estimates that 77 were "overtime hours" worked in excess of 40 hours in a week.

175.   Plaintiff Moon was not paid any wages for the hours that he worked.

176.   Instead, Plaintiff Moon was paid only a portion of the tips that were left by patrons of the Club.

**2014**

177.    While employed at the Club from January 1, 2014 through December 31, 2014, Plaintiff Moon worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

178.    Plaintiff Moon was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

179.    Plaintiff Moon worked an additional approximately 57 hours on five holidays on which the Club was open, and additional 12 hours over two nights during the World Cup finals and an additional 12 hours selling Club tickets for Halloween and New Years.

180.    Plaintiff Moon estimates that in 2014 he worked at least 2161 hours.

181.    Of these hours, Plaintiff Moon estimates that 81 were "overtime hours" worked in excess of 40 hours in a week.

182.    Plaintiff Moon was not paid any wages for the hours that he worked.

183.    Instead, Plaintiff Moon was paid only a portion of the tips that were left by patrons of the Club.

**2015**

184.    While employed at the Club from January 1, 2015 through December 31, 2015, Plaintiff Moon worked at the Club on nearly every other Thursday, and nearly every Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

185.    Plaintiff Moon was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

186.    Plaintiff Moon worked an additional approximately 35 hours on three holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New

Years.

187.    Plaintiff estimates that in 2015 he worked at least 1789 hours.

188.    Plaintiff Moon was not paid any wages for the hours that he worked.

189.    Instead, Plaintiff Moon was paid only a portion of the tips that were left by patrons of the Club.

**2016**

190.    While employed at the Club from January 1, 2016 through December 31, 2016, Plaintiff Moon worked at the Club on nearly every other Thursday, and nearly every Friday and Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

191.    Plaintiff Moon was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

192.    Plaintiff Moon worked an additional approximately 22 hours on two holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

193.    Plaintiff Moon worked an additional 11 hours at the Club's "9th Year" party

194.    Plaintiff Moon estimates that in 2016 he worked at least 1787 hours.

195.    Plaintiff Moon was not paid any wages for the hours that he worked.

196.    Instead, Plaintiff Moon was paid only a portion of the tips that were left by patrons of the Club.

**2017**

197.    While employed at the Club from January 1, 2017 through approximately May 30, 2017, Plaintiff Moon worked at the Club on nearly every other Thursday, and nearly every Friday and Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

198.    Plaintiff Moon was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

199.    Plaintiff Moon estimates that in 2017 he worked at least 690 hours.

200.    Plaintiff Moon was not paid any wages for the hours that he worked.

201.    Instead, Plaintiff Moon was paid only a portion of the tips that were left by patrons of the Club.

202.    Plaintiff Moon was not paid any of the tips that were earned over his final two weeks of employment.

## Woo Bin Im's Employment

### 2011

203.    While employed at the Club from January1, 2011 through December 31, 2011, Plaintiff Im worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

204.    Plaintiff Im's primary duties throughout his employment included setting up the Club before patrons arrived, stocking the Club's refrigerator's with Champagne, setting and cleaning glasses, serving bottles to patrons, and cleaning the Club after patrons left.

205.    Plaintiff Im was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

206.    Plaintiff Im worked an additional approximately 79 hours on seven holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

207.    Plaintiff estimates that in 2011 he worked at least 2171 hours.

208.    Of these hours, Plaintiff Moon estimates that 91 were "overtime hours" worked in excess of 40 hours in a week.

209.    Plaintiff Im was not paid any wages for the hours that he worked.

210.    Instead, Plaintiff was paid only a portion of the tips that were left by patrons of the Club.

**2012**

211.    While employed at the Club from January 1, 2012 through December 31, 2012, Plaintiff Im worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

212.    Plaintiff Im was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

213.    Plaintiff Im worked an additional approximately 68 hours on six holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

214.    Plaintiff Im also worked for six nights at the "Asseteria" party for 10 hours each night.

215.    Plaintiff Im estimates that in 2012 he worked at least 2220 hours.

216.    Of these hours, Plaintiff Im estimates that 140 were "overtime hours" worked in excess of 40 hours in a week.

217.    Plaintiff Im was not paid any wages for the hours that he worked.

218.    Instead, Plaintiff Im was paid only a portion of the tips that were left by patrons of the Club.

**2013**

219.    While employed at the Club from January 1, 2013 through December 31, 2013, Plaintiff Im worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

22

220.    Plaintiff Im was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

221.    Plaintiff Im worked an additional approximately 58 hours on five holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

222.    Plaintiff Im worked an additional 7 hours at the "Diplo" party and an additional 10 hours assisting with the Club renovation in January, 2013.

223.    Plaintiff Im also worked for six nights at the "Asseteria" party for 10 hours each night.

224.    Plaintiff Im estimates that in 2013 he worked at least 2227 hours.

225.    Of these hours, Plaintiff Im estimates that 147 were "overtime hours" worked in excess of 40 hours in a week.

226.    Plaintiff Im was not paid any wages for the hours that he worked.

227.    Instead, Plaintiff Im was paid only a portion of the tips that were left by patrons of the Club.

**2014**

228.    While employed at the Club from January 1, 2014 through December 31, 2014, Plaintiff Im worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

229.    Plaintiff Im was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

230.    Plaintiff Im worked an additional approximately 57 hours on five holidays on which the Club was open, and additional 12 hours over two nights during the World Cup finals and an additional 12 hours selling Club tickets for Halloween and New Years.

23

231.   Plaintiff also worked for six nights at the "Asseteria" party for 10 hours each night.

232.   Plaintiff Im estimates that in 2014 he worked at least 2221 hours.

233.   Of these hours, Plaintiff Moon estimates that 141 were "overtime hours" worked in excess of 40 hours in a week.

234.   Plaintiff Im was not paid any wages for the hours that he worked.

235.   Instead, Plaintiff Im was paid only a portion of the tips that were left by patrons of the Club.

**2015**

236.   While employed at the Club from January 1, 2015 through December 31, 2015, Plaintiff Im worked at the Club on nearly every other Thursday, and nearly every Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

237.   Plaintiff Im was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

238.   Plaintiff Im worked an additional approximately 35 hours on three holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

239.   Plaintiff also worked for six nights at the "Asseteria" party for 10 hours each night.

240.   Plaintiff Im estimates that in 2015 he worked at least 1849 hours.

241.   Plaintiff Im was not paid any wages for the hours that he worked.

242.   Instead, Plaintiff Im was paid only a portion of the tips that were left by patrons of the Club.

**2016**

243.   While employed at the Club from January 1, 2016 through December 31, 2016, Plaintiff Im worked at the Club on nearly every other Thursday, and nearly every Friday and

Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

244.    Plaintiff Im was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

245.    Plaintiff Im worked an additional approximately 22 hours on two holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

246.    Plaintiff Im worked an additional 11 hours at the Club's "9th Year" party

247.    Plaintiff estimates that in 2016 he worked at least 1787 hours.

248.    Plaintiff Im was not paid any wages for the hours that he worked.

249.    Instead, Plaintiff Im was paid only a portion of the tips that were left by patrons of the Club.

**2017**

250.    While employed at the Club from January 1, 2017 through approximately May 30, 2017, Plaintiff Im worked at the Club on nearly every other Thursday, and nearly every Friday and Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

251.    Plaintiff Im was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

252.    Plaintiff Im estimates that in 2017 he worked at least 690 hours.

253.    Plaintiff Im was not paid any wages for the hours that he worked.

254.    Instead, Plaintiff Im was paid only a portion of the tips that were left by patrons of the Club.

255.    Plaintiff Im was not paid any of the tips that were earned over his final two weeks of employment.

25

## Chang Seok Son's Employment

<u>**2015**</u>

256.   While employed at the Club from January 1, 2015 through December 31, 2015, Plaintiff Son worked at the Club on nearly every other Thursday, and every Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

257.   Plaintiff Son's primary duties throughout his employment included setting up the Club before patrons arrived, stocking the Club's refrigerator's with Champagne, setting and cleaning glasses, serving bottles to patrons, and cleaning the Club after patrons left.

258.   Plaintiff Son was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

259.   Plaintiff Son worked an additional approximately 35 hours on three holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

260.   Plaintiff Son estimates that in 2015 he worked at least 2127 hours.

261.   Of these hours, Plaintiff Son estimates that 47 were "overtime hours" worked in excess of 40 hours in a week.

262.   Plaintiff Son was not paid any wages for the hours that he worked.

263.   Instead, Plaintiff Son was paid only a portion of the tips that were left by patrons of the Club.

<u>**2016**</u>

264.   While employed at the Club from January 1, 2016 through December 31, 2016, Plaintiff Son worked at the Club on nearly every other Thursday, and nearly every Friday and Saturday for 11 hours on each day  from 7 p.m. to past 6 a.m.

265.    Additionally, Plaintiff Son was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

266.    Plaintiff Son worked an additional approximately 33 hours on three holidays on which the Club was open and an additional 12 hours selling Club tickets for Halloween and New Years.

267.    Plaintiff Son worked an additional 11 hours at the Club's "9th Year" party.

268.    Plaintiff Son was also required to attend dance practice sessions to prepare for a dance performance that the servers at the Club were required to perform in.

269.    Plaintiff estimates that he worked 192 hours practicing for the dance performance.

270.    Plaintiff Son estimates that in 2016 he worked at least 2328 hours.

271.    Of these hours, Plaintiff Son estimates that 248 were "overtime hours" worked in excess of 40 hours in a week.

272.    Plaintiff Son was not paid any wages for the hours that he worked.

273.    Instead, Plaintiff Son was paid only a portion of the tips that were left by patrons of the Club.

**2017**

274.    While employed at the Club from January 1, 2017 through approximately May 30, 2017, Plaintiff Son worked at the Club on nearly every Thursday, Friday and Saturday for 11 hours on each day from 7 p.m. to past 6 a.m.

275.    Additionally, Plaintiff Son was required to work an additional seven hours each week hanging posters for the Club and doing other promotional work.

276.    Plaintiff estimates that in 2017 he worked at least 800 hours.

277.    Plaintiff Son was not paid any wages for the hours that he worked.

278.    Instead, Plaintiff Son was paid only a portion of the tips that were left by patrons of the Club.

279.    Plaintiff Son was not paid any of the tips that were earned over his final two weeks of employment.

## Defendants Did Not Pay Plaintiffs the Minimum Wage

280.    Both the FLSA and New York Labor Law require that employers pay their employees specified minimum hourly wages. 29 U.S.C. § 206; N.Y. Labor Law § 652.

281.    Throughout their employment, Plaintiffs' pay rates were below the statutorily required federal and New York State minimum wage rates because they were not paid any wages.

282.    During the applicable statutory period, Plaintiffs were not exempt from the minimum wage laws pursuant to the FLSA and New York Labor Law.

283.    Plaintiffs are "tipped employees" under the FLSA, which defines "tipped employee" as an employee "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t).

284.    However, Defendants were ineligible for a tip credit against their minimum wage obligations with regard to Plaintiffs because, among other things, Defendants did not notify Plaintiffs of the applicable legal provisions of the FLSA or the New York Labor Law, or of Defendants' intention to claim a tip credit against their minimum wage obligations to reduce the applicable minimum wage.

285.    Defendants did not notify Plaintiffs of the tip credit provisions of the FLSA or of Defendants' intention to claim a tip credit against their minimum wage obligations to reduce the applicable minimum wage.

286.    As a result, the Defendants are ineligible for the tip credit under the FLSA.

287.     Moreover, as required by New York Labor Law to claim a tip allowance against the minimum wage obligations, the Defendants did not provide the Plaintiffs a written notice of their regular hourly pay rate, their overtime hourly pay rate, the amount of tip credit to be taken from the basic minimum hourly pay rate, and the regular payday, nor did Defendants provide explicit notice that extra pay is required if tips are insufficient to bring Plaintiffs' wages up to the basic minimum hourly rate.

288.     As a result, Defendants are further ineligible for the tip credit under the New York Labor Law.

### Defendants Did Not Pay Plaintiffs Overtime or Spread of Hours Pay

289.     Under federal and state law, employers are also required to pay their employees additional overtime wages for hours worked in excess of forty during a work week.

290.     Plaintiffs sometimes worked more than forty hours per week as specified in this complaint.

291.     Throughout Plaintiffs' employment, Defendants did not pay Plaintiffs any overtime wages for their overtime work.

292.     During the applicable statutory period, Plaintiffs were not exempt from the overtime laws pursuant to the FLSA and New York Labor Law.

293.     Throughout their employment, Plaintiffs regularly worked a "spread of hours" that exceeded ten hours per day.

294.     Defendants did not pay Plaintiffs "spread of hours pay" when their spread of hours exceeded ten as required by New York Labor Law.

### Defendants Did Not Provide Full and Accurate Pay Stubs when Paying Wages

295.     Under New York Labor Law, employers must provide employees with accurate pay

stubs each time they pay wages.

296.     These pay stubs must meet the requirements of New York Labor Law §195(3), which include date ranges, rate of pay, gross wages, deductions, any claimed allowances for paying below the minimum wage, net pay, the regular and overtime rates of pay, the number of regular hours worked, and the number of overtime hours worked if the employee is eligible for overtime.

297.     Defendants paid Plaintiffs only a portion of tips earned without providing Plaintiffs any documentation of their wages as required by New York Labor Law.

298.     Upon information and belief, at all relevant times herein, Defendants failed to keep full and accurate records of Plaintiffs' hours and wages.

### Defendants Did Not Provide Required Notices

299.     New York State Labor Law requires that employers provide their employees in writing, in English and in the employees' primary language, notice of the rate of pay, tip allowances, meal allowances, and other information pertinent to employment pursuant to N.Y. Labor Law § 195(1).

300.     Defendants failed to provide Plaintiffs with the notices as required by New York Labor Law.

### Defendants Misappropriated Plaintiffs' Tip

301.     Defendants pooled all of the tips left by patrons of the Club.

302.     The pooled tips were distributed to the Club employees in "shares" ranging from 50% to 100%.

303.     From the time Plaintiffs started working for Defendants until approximately 2014, Plaintiffs were required to share a portion of the tip pool with the Club managers.

304.     Throughout Plaintiffs' employment, Plaintiffs were required to share a portion of the

tip pool with other non-tipped employees such as Club promoters.

305.    Defendants also failed to distribute any of the tips earned during the final two weeks of Plaintiffs' employment.

## FIRST CAUSE OF ACTION

### Claim for Minimum Wages Under the Fair Labor Standards Act

306.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

307.    Defendants willfully failed to compensate Plaintiffs and Putative Collective Action Members at the applicable legal minimum hourly wage, in violation of 29 U.S.C. § 206(a).

308.    Defendants' violations of the FLSA, as described in this complaint, were willful and intentional.

309.    Due to Defendants' FLSA violations, Plaintiffs and Putative Collective Action Members are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, pursuant to the FLSA, specifically 29 U.S.C. § 216(b), and/or prejudgment interest, all in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### Claim for Minimum Wages Under New York Labor Law

310.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

311.    Defendants willfully failed to compensate Plaintiffs at the applicable legal minimum hourly wage, in violation of the New York Minimum Wage Act, specifically New York Labor Law § 652, and accompanying regulations, including 12 N.Y.C.R.R. §§ 146-1.2.

312.    Defendants' violations of the New York Labor Law, as described in the complaint, were willful and intentional.

313.    Due to Defendants' New York Labor Law violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees, costs of the action, and prejudgment interest, all in an amount to be determined at trial.

<u>**THIRD CAUSE OF ACTION**</u>

**Claim for Overtime Wages Under the Fair Labor Standards Act**

314.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

315.    Defendants willfully failed to pay Plaintiffs and Putative Collective Action Members overtime wages at a rate of one and one-half times their regular rate of pay, or one and one-half times the applicable minimum wage, for each hour worked in excess of forty hours per week, in violation of 29 U.S.C. § 207(a)(1).

316.    Defendants' violations of the FLSA, as described in this complaint, were willful and intentional.

317.    Due to Defendants' FLSA violations, Plaintiffs and Putative Collective Action Members are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, pursuant to the FLSA, specifically 29 U.S.C. § 216(b), and/or prejudgment interest, all in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Claim for Overtime Wages Under New York Labor Law

318.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

319.    The Defendants willfully failed to pay Plaintiffs overtime wages at a rate of one and one-half times their regular rate of pay, or one and one-half times the applicable minimum wage, for each hour worked in excess of forty hours per week, in violation of the New York Labor Law and accompanying regulations, including 12 N.Y.C.R.R. §§ 146-1.4.

320.    Defendants' violations of the New York Labor Law, as described in the complaint, were willful and intentional.

321.    Due to Defendants' violations of New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtimes wages and an equal amount in the form of liquidated damages, as well as attorneys' fees, costs of the action, and prejudgment interest, all in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### Claim for Spread of Hours Payments Under New York Labor Law

322.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

323.    Defendants willfully failed to pay Plaintiffs spread of hours wages of an additional hour of pay at the minimum wage for each day Plaintiffs had a spread of hours in excess of ten hours per day, in violation of the New York Labor Law and accompanying regulations, including 12 N.Y.C.R.R. §§ 146-1.6.

324.    Defendants' violations of the New York Labor Law, as described in this complaint, were willful and intentional.

33

325.    Due to Defendants' violations of the New York Labor Law, Plaintiffs are entitled to recover from Defendants, jointly and severally, all spread of hours payments in the form of one hour of additional pay at the applicable minimum wage rate for each day in which a Plaintiff had a spread of hours in excess of ten hours and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees, costs of the action, and prejudgment interest, all in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### Claim for Defendants' Failure to Provide Pay Stubs Under New York Labor Law

326.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

327.    Defendants failed to provide full and accurate pay stubs to Plaintiffs each time Defendants paid wages to Plaintiffs in violation of New York Labor Law § 195(3).

328.    Defendants' violations of the New York Labor Law, as described in the complaint, were willful and intentional.

329.    Due to Defendants' violations of the New York Labor Law, Plaintiffs are entitled to recover damages from Defendants, jointly and severally, as well as reasonable attorneys' fees, costs of the action, and prejudgment interest, all in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION

### Claim for Defendants' Failure to Provide Pay Rate Notices Under New York Labor Law

330.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

331.    Defendants failed to provide Plaintiffs a notice of their rates of pay in violation of New York Labor Law § 195(1).

332.    Defendants' violations of the New York Labor Law, as described in the complaint, were willful and intentional.

333.    Due to Defendants' violations of the New York Labor Law, Plaintiffs are entitled to recover damages from Defendants, jointly and severally, as well as reasonable attorneys' fees, costs of the action, and prejudgment interest, all in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### Claim for Defendants' Tip Misappropriation

334.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

335.    Throughout Plaintiffs' employment by Defendants, Plaintiffs and Putative Collective Action Members were forced to share their tips with non-tipped employees.

336.    Defendants also failed to distribute to Plaintiffs any of the tips earned during the final two weeks of Plaintiffs' employment.

337.    Defendants' violations of the FLSA and New York Labor Law for misappropriating tips as described in this complaint, were willful and intentional.

338.    Due to Defendants' violations of the FLSA and New York Labor Law, Plaintiffs and Putative Collective Action Members are entitled to recover damages from Defendants, jointly and severally, for the amount of the misappropriated tips  as well as liquidated damages, reasonable attorneys' fees, costs of the action, and prejudgment interest, all in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that judgment be granted:

(a)    Designating this action as a collective action on behalf of the Putative Collective

Action Members and ordering issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

(b)    Designating Plaintiffs as representatives of the FLSA Collective Action Members;

(c)    Awarding Plaintiffs and Putative Collective Action Members unpaid minimum wages due under the FLSA, the New York Minimum Wage Act, and the New York Labor Law and its regulations as applicable;

(d)    Awarding Plaintiffs and Putative Collective Action Members unpaid overtime wages due under the FLSA and the New York Labor Law and its regulations as applicable;

(e)    Awarding Plaintiffs additional pay for all spread of hours violations;

(f)    Awarding Plaintiffs damages for Defendants' failure to provide pay stubs as required by the New York Labor Law;

(g)    Awarding Plaintiffs damages for Defendants' failure to provide a notice of pay rate as required by the New York Labor Law;

(h)    Awarding Plaintiffs and Putative Collective Action Members damages for the misappropriated tips;

(i)    Awarding Plaintiffs and Putative Collective Action Members liquidated damages;

(j)    Awarding Plaintiffs and Putative Collective Action Members prejudgment and post-judgment interest;

(k)    Awarding Plaintiffs and Putative Collective Action Members the costs of this action, together with reasonable attorneys' fees; and

36

(l)     Awarding other and further relief as this Court deems necessary and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to FED. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all questions of fact raised by the Complaint.

Dated:  Lake Success, New York
       August 4, 2017

                            Yours, etc.

                            VISHNICK MCGOVERN MILIZIO LLP

                            By:    Avrohom Gefen
                                  Andrew A. Kimler
                            3000 Marcus Avenue, Suite 1E9
                            Lake Success, New York 11042
                            (516) 437-4385
                            agefen@vmmlegal.com
                            akimler@vmmlegal.com